```
          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| RUSS SMITH, | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | |
| v. | Civil Action<br>No. 15-00081 (JBS/AMD) |
| DIRECTOR'S CHOICE, LLC | |
| Defendant. | **OPINION** |

APPEARANCES:

Mr. Russ Smith
P.O. Box 1860
Ocean City, NJ 08226
    Pro Se

Matthew A. Kaplan, Esq.
ABBOTT BUSHLOW & SCHECHNER LLP
70-11 Fresh Pond Road
Ridgewood, NJ 11385
    Attorney for Defendant

**SIMANDLE, Chief Judge:**

**I.    INTRODUCTION**

   This case involves a dispute between pro se Plaintiff Russ Smith and Defendant Director's Choice, LLC ("Director's Choice") over Smith's registration and use of the domain name <directorschoice.com>. The domain name was registered to a business entity owned by Smith, HELP.org, LLC ("HELP.org"), when Director's Choice brought a complaint against HELP.org under the Uniform Domain Name Dispute Resolution Policy ("UDPR"). An arbitration panel declared that Director's Choice had common law

trademark rights to the "Director's Choice" mark and that HELP.org was a cybersquatter, and ordered the transfer of <directorschoice.org> to Defendant. Smith then changed the registrant of the domain name to himself and filed a civil action against Defendant under the Anti-Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1114(2)(D)(v), challenging the panel's decision against HELP.org.

Presently before the Court is a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) by Defendant Director's Choice [Docket Item 9], and a motion for partial summary judgment by Smith [Docket Item 19]. Before the Court can resolve Smith's motion, it must determine whether Smith has standing to file suit. Specifically, the Court must decide whether Smith, whose company HELP.org was the "domain name registrant" of a domain name at the time of an arbitration panel decision has statutory standing to file a civil action to seek injunctive relief under the ACPA. The Court finds that he does, and will deny Defendant's motion to dismiss. Accordingly, the Court will lift the stay on Plaintiff's motion for summary judgment.

## II. BACKGROUND

### A. The Anti-Cybersquatting Consumer Protection Act

The Anti-Cybersquatting Consumer Protection Act ("ACPA"), Pub.L. No. 106-113, § 3001 et seq., 113 Stat. 1501A-545

(codified in scattered sections of 15 U.S.C.), was enacted in 1999 to prevent the practice of "cybersquatting," a phenomenon "whereby individuals register Internet domain names in violation of the rights of trademark owners." Sallen v. Corinthians Licenciamentos LTDA, 273 F.3d 14, 17 (1st Cir. 2001) (citing S. Rep. No. 106-140, at 4 (1999)).[1] Cybersquatters register domain names incorporating the trademarks of others in bad faith, with the intent of selling the domain names back to the trademark owners, or profiting in some other way from the goodwill associated with the trademarks. See id. at 17; Shields v. Zuccarini, 254 F.3d 476, 481 (3d Cir. 2001). The ACPA makes it illegal for a person to register an internet domain name that is "identical or confusingly similar" to the trademark of another person or company, with the "bad faith" intent to profit from that mark. 15 U.S.C. § 1125(d)(1)(A). To "balance the rights given to trademark owners against cybersquatters, the ACPA also provides some protection to domain name registrants against 'overreaching trademark owners,'" and allows domain name registrants to commence an action to declare that the domain name registration or use is not unlawful. Barcelona.com, Inc. v.

---

[1] A domain name is "any alphanumeric designation which is registered with or assigned by any domain name registrar, domain name registry, or other domain name registration authority as part of an electronic address on the Internet." 15 U.S.C. § 1127.

Excelentisimo Ayuntamiento de Barcelona, 330 F.3d 617, 625 (4th Cir. 2003).

In order to claim a particular domain name, a registrant makes an application to a registrar, submits a fee, and agrees to the terms of the domain name registration agreement. See Barcelona.com, Inc. v. Excelentisimo Ayuntamiento de Barcelona, 330 F.3d 617, 624 (4th Cir. 2003). The registration agreement includes a dispute resolution process, the Uniform Domain Name Dispute Resolution Policy ("UDRP"), a contractually mandated process for resolving disputes that might arise between domain name registrants and trademark owners. The UDRP is intended to provide a quick process for resolving domain name disputes by submitting them to authorized dispute resolution panels. Sallen, 273 F.3d at 20-21. If the dispute resolution panel finds that the domain name registrant has no rights or legitimate interests in the domain name and is using the domain name in bad faith, the dispute resolution panel may order the registrar to cancel or transfer registration of the domain name to the trademark holder. See id. at 21; Barcelona.com, 330 F.3d at 624.

The ACPA recognizes a registrar's decision to cancel, disable, or transfer a domain name under the UDRP, and limits its liability with respect to those decisions. In addition, as noted above, 15 U.S.C. § 1114(2)(D)(v) allows a "domain name registrant whose domain name has been suspended, disabled, or

4

transferred under a policy described under clause (ii)(II)" to file an action in federal court. The "policy described under clause (ii)(II)" encompasses registrar actions taken pursuant to UDRP panel decisions.[2] Barcelona.com, 330 F.3d at 625; see also Sallen, 273 F.3d at 29 ("(D)(v) is best understood to provide domain name holders with a cause of action to rectify reverse domain name hijacking by trademark holders using the UDRP process to require registrants to transfer domain names originally held by rightful users under U.S. law."). Similarly, § 1114(2)(D)(iv) permits "the domain name registrant" to file a civil suit to recover damages against a person if the registrar's actions were based upon a knowing and material misrepresentation by that person that the domain name is identical to or confusingly similar to a protected mark.

In other words, a person who lost his domain name to a trademark owner in a dispute resolution proceeding mandated by the UDRP may file an action in federal court under these provisions to recover the domain name. If the plaintiff can prove that that his registration or use of the domain name is not unlawful under the Lanham Act (as amended by the ACPA), he

---

[2] Specifically, the "policy" refers to the registrar's implementation of a "reasonable policy . . . prohibiting the registration of a domain name that is identical to, confusingly similar to, or dilutive of another's mark." 15 U.S.C. § 1114(2)(D)(ii)(II).

is entitled to declaratory relief and an injunction requiring the registrar to reactivate or transfer the domain name back to the domain name registrant. 15 U.S.C. §§ 1114(2)(D)(iv) & (v); see also Barcelona.com, 330 F.3d at 626.

### B. Factual Background

For the past eighteen years, Plaintiff Russ Smith has operated a variety of business entities that develop web sites that generate income through the display of advertisements. (Am. Compl. ¶ 11.) These entities regularly buy and sell both web sites and domain names. (Id.) On March 7, 2000, a now-dissolved business entity operated by Smith registered the domain name <directorschoice.com> ("domain name"). (Id. ¶ 12.) The domain name registration was at some point transferred to HELP.org, LLC ("HELP.org"), of which Smith is the owner. The domain name is currently owned by Smith and operates as a movie review web site. (Id. ¶ 15.)

In 2002, Defendant Director's Choice contacted Smith for the first time to inquire about purchasing the domain name. (Id. ¶ 13.) Over the next twelve years, Defendant intermittently contacted Smith via email seeking to purchase the domain name. (See Ex. A-F to Am. Compl.) When Smith placed the domain name up for sale in 2014, Defendant filed a complaint against HELP.org pursuant to the Internet Corporation for Assigned Names and Numbers' ("ICANN") Uniform Domain Name Dispute Resolution Policy

6

("UDRP"). Defendant alleged that it had maintained "continuous and extensive use of 'DIRECTOR'S CHOICE' as a common law trademark" (id. ¶¶ 13-14); that Smith had no right to the mark because he did not register the domain name until nearly three years after Defendant began using the mark in commerce; and Smith's use of the domain name was in bad faith because it was intended to attract internet users to Smith's site by creating confusion between Smith's site and Defendant's services. (See Notice of Opp'n, Ex. C to Mot. to Dismiss [Docket Item 9-7].)

On December 22, 2014, a three-member administrative panel with the National Arbitration Forum ("NAF") agreed with Defendant that HELP.org, LLC did not have any rights or legitimate interests in the disputed domain name and ordered the transfer of the domain name from HELP.org, LLC to Defendant. (Id. ¶ 1.) Shortly thereafter, on January 7 or 8, 2015, Plaintiff changed the Registrant for the disputed domain name from the business entity HELP.org, LLC, of which he is the owner, to himself, Russ Smith. (Compare WHOIS Record dated Jan. 8, 2015, Ex. H to Mot. to Dismiss [Docket Item 9-12] with WHOIS Record dated Jan. 6, 2015, Ex. I to Mot. to Dismiss [Docket Item 9-13].)

At around the same time, on January 7, 2015, Smith filed a two-count Complaint [Docket Item 1] against Director's Choice

7

under the ACPA, 15 U.S.C. § 1114(2)(D)(iv) and (v),[3] arguing that his use of the domain name is lawful, and that Defendant made materially false statements to the UDRP panel which caused the panel to order the domain name transferred to Defendant. Smith challenges the decision of the UDRP panel and seeks a declaration of his lawful use of the domain name (Count One), and a declaration that the Defendant made materially false statements to the UDRP panel (Count Two). He asks this Court to enjoin the transfer of the domain name to Director's Choice, and for an award of damages in the amount of $2,100. (Am. Compl. ¶¶ 50-56.)[4]

Defendant filed the instant motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), arguing that Smith lacks standing to sue under the ACPA. Specifically, Defendant contends that the "domain name registrant" who files suit under § 1114(2)(D)(iv) and (v) must have been the domain name registrant at the time of the UDRP proceedings, and alternatively, that Smith does not hold trademark rights individually in the Mark "DIRECTOR'S CHOICE." (Def. Br. [Docket Item 9] at 9-11.) Smith maintains that there is no requirement that a domain name registrant at the time the

---

[3] The Complaint was subsequently amended on February 6, 2015. [Docket Item 7.]
[4] The domain name does not appear to have been transferred to Director's Choice.

arbitration dispute was decided be the same "domain name registrant" who files suit under the ACPA. (Pl. Br. [Docket Item 12] at 3-4.) Plaintiff has also filed a motion for summary judgment on Count One of his Amended Complaint. [Docket Item 19.][5]

**III. Standard of Review**

A motion to dismiss for lack of standing is properly brought pursuant to Rule 12(b)(1) because standing is a jurisdictional matter. Constitution Party of Pa. v. Aichele, 757 F.3d 347, 357 (3d Cir. 2014) (internal citation omitted). In deciding such a motion, a court must first determine whether the movant presents a facial or factual attack, because that distinction determines how the pleading is reviewed. Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). A facial challenge contests the sufficiency of the complaint because of an alleged pleading deficiency, while a factual attack challenges the actual failure of the plaintiff's claims to comport with jurisdictional prerequisites. See id.; United States ex rel. Atkinson v. PA. Shipbuilding Co., 473 F.3d 506, 514 (3d Cir. 2007).

---

[5] Briefing on Plaintiff's summary judgment motion was temporarily stayed pending the present motion to dismiss, by Order entered November 19, 2015. [Docket Item 24.]

9

A Rule 12(b)(1) motion is facial in nature when filed prior to any answer, because it ordinarily calls for assessment of the pleadings only. See Aichele, 757 F.3d at 358 (facial attack occurs before the moving party has filed an answer or otherwise contested the factual allegations of the complaint); Cardio-Med. Assocs., Ltd. v. Crozer-Chester Med. Ctr., 721 F.2d 68, 75 (3d Cir. 1983) ("[D]efendants' motion under Rule 12(b)(1) was filed prior to any answer. The motion is therefore a facial challenge to jurisdiction." (citing Mortensen, 549 F.2d 884, 891 (3d Cir. 1977))); Bennett v. Atlantic City, 288 F. Supp. 2d 675, 678 (D.N.J. 2003) ("A motion to dismiss on the basis of Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction made prior to the filing of the defendant's answer is a facial challenge to the complaint.").

In reviewing a facial challenge to standing, the court must accept as true all material allegations set forth in the complaint. The court may rely on "documents referenced [in the complaint] and attached thereto," but must consider them in light most favorable to the plaintiff.[6] Gould Electronics Inc. v.

---

[6] Because the Complaint is predicated upon the underlying NAF decision ordering the transfer of the domain name to Director's Choice and Plaintiff alleges that he is the domain name registrant, documents related to these matters submitted by both parties will be considered in connection with the pending motion to dismiss. See In re Rockefeller Ctr. Props., Inc., Sec. Litig., 184 F.3d 280, 287 (3d Cir. 1999).

10

United States, 220 F.3d 169, 176 (3d Cir. 2000); see also In re Schering Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012); Ballentine v. United States, 486 F.3d 806, 810 (3d Cir. 2007).

**IV.   DISCUSSION**

The question before the Court is whether 15 U.S.C. §§ 1114(2)(D)(iv) and (v) permit Smith, the current "domain name registrant" of <directorschoice.com>, to file a civil action to establish that his registration and use of the domain name is lawful, even though the UDRP complaint was decided against HELP.org, not Smith.

Defendant frames this issue as one of statutory standing. "Statutory standing is simply statutory interpretation: the question it asks is whether Congress has accorded *this* injured plaintiff the right to sue the defendant to redress his injury." Graden v. Conexant Sys. Inc., 496 F.3d 291, 295 (3d Cir. 2007). As with all questions of statutory interpretation, the Court begins with the text of the statute. See Chamber of Commerce v. Whiting, 131 S. Ct. 1968, 1980 (2011) ("[A]s we have said before, Congress's authoritative statement is the statutory text, not the legislative history.'" (quoting Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 568 (2005))).

15 U.S.C. § 1114(2)(D)(iv) and (v) provides:

>   (iv) If a registrar, registry, or other registration authority takes an action described under clause (ii) based on a knowing and material misrepresentation by any other person that a domain name is identical to, confusingly similar to, or dilutive of a mark, the person making the knowing and material misrepresentation shall be liable for any damages, including costs and attorney's fees, incurred by the domain name registrant as a result of such action. The court may also grant injunctive relief to the domain name registrant, including the reactivation of the domain name or the transfer of the domain name to the domain name registrant.
>
>   (v) A domain name registrant whose domain name has been suspended, disabled, or transferred under a policy described under clause (ii)(II) may, upon notice to the mark owner, file a civil action to establish that the registration or use of the domain name by such registrant is not unlawful under this chapter. The court may grant injunctive relief to the domain name registrant, including the reactivation of the domain name or transfer of the domain name to the domain name registrant.[7]

Subsection (v) allows a "domain name registrant whose domain name has been suspended, disabled, or transferred" under a specified policy (such as the UDRP) to sue. The Court reads this provision to mean that a registrant of a transferred domain name may file a civil suit to recover a domain name if he lost the domain name through the UDRP process. Plaintiff clearly falls

---

[7] To establish a right to relief against an overreaching trademark owner under § 1114(2)(D)(v), a plaintiff must prove "(1) that it is a domain name registrant; (2) that its domain name was suspended, disabled, or transferred" by a registrar under the UDPR; (3) that proper notice of the civil action has been made to the owner of the mark, "by service or otherwise"; and (4) "that the plaintiff's registration or use of the domain name is not unlawful under the Lanham Act, as amended." Barcelona.com, 330 F.3d at 626.

12

within the meaning of this phrase: he is the current "domain name registrant" of <directorschoice.com>, and his domain name was ordered transferred by the NAF panel that decided the UDRP case brought by Director's Choice.

Defendant attempts to confuse by arguing that §§ 1114(2)(D)(iv) and (v) cannot be read to permit a different "registrant" to file suit than the one who participated in the UDRP. That question is not implicated here, because the two registrants are one and the same. Although the respondent in the arbitration case was HELP.org, there is no real dispute that HELP.org was operated by Smith at the time, and that Smith was the sole owner of the LLC. Indeed, although Defendant insists that the UDRP decision was against HELP.org, the actual respondent named in the Complaint filed before the NAF, which Defendant attaches to the motion to dismiss, is "HELP.org Domain Administrator," which is Smith. (NAF Complaint, Ex. A to Def. Br. [Docket Item 9-3], at 1.)

To the extent Defendant argues that the provision must be read to mean that the person who files the civil suit must have been listed as the "domain name registrant" at the time of the UDRP decision,[8] (Def. Br. at 8; see also Def. Reply Br. [Docket

---

[8] The Court has not found any cases that that have considered the precise issue presented here, namely, whether 15 U.S.C. §§ 1114(2)(D)(iv) and (v) allow someone other than the formal

13

Item 13] at 2), the Court does not agree. The statute states only that "[a] domain name registrant whose domain name has been suspended, disabled, or transferred" may file a civil action. Thus, if A was the domain name registrant at the time of the UDRP decision, A may, of course, sue under a plain reading of 15 U.S.C. §§ 1114(2)(D)(v). But contrary to Defendant's contention, the statute does not permit only A to sue. The UDRP decision binds A and anyone else with whom A is in privity, such as B. If registration of the domain name was later transferred to B, B would fall within the meaning of "domain name registrant whose domain name has been suspended, disabled, or transferred."[9]

    Defendant cites dicta from only one case, <u>Dlulos v. Strasberg</u>, 321 F.3d 365 (3d Cir. 2003), but the case provides no support for Defendant's position. Although the Third Circuit described § 1114(2)(D)(v) as "provid[ing] registrants . . . with an affirmative cause of action to recover domain names," 321 F.3d at 373, it did not attempt to define the word "registrant," nor did it suggest that the statute permitted only the

---

domain name registrant at the time of the arbitration proceeding to file suit.

[9] Plaintiff does not lose standing to sue by changing the domain name registrant from an entity owned by him to himself, but neither will he insulate himself from the prior conduct of HELP.org. Because he is in privity with HELP.org, in order to prove that registration and use of <directorschoice.com> were lawful, Plaintiff must still prove that the actions taken by domain name registrant HELP.org were not in bad faith.

14

registrant listed at the time of the UDRP to file suit. Rather, the opinion emphasized that the UDRP was meant to provide "registrants" who lose a domain name to a trademark holder a "'clear mechanism' for 'seeking judicial review of a decision of an administrative panel cancelling or transferring the domain name.'" Id. at 372. The statute is intended to provide the person who lost his domain name in the UDRP process an opportunity to redress his loss in federal court. HELP.org was the domain name registrant at the time of the UDRP decision, but as HELP.org's sole owner, Plaintiff suffered the loss of the domain name, and he seeks review of the decision rendered by the NAF panel against HELP.org. Nothing in Dlulos prohibits Plaintiff from seeking such a review even though he was not named as the domain name registrant at the time of the UDRP decision.

    The Court therefore finds that under this particular set of facts, Smith, who was the sole owner of HELP.org at the time HELP.org was the "domain name registrant" subject to the arbitration panel decision, counts as a "domain name registrant" within the meaning of §§ 1114(2)(D)(iv) and (v) of the ACPA for filing a civil action.

    Defendant's second argument, that Plaintiff lacks standing because he has no trademark rights in "DIRECTOR'S CHOICE," is equally without merit. 15 U.S.C. § 1114(2)(D)(v) does not

15

require a domain name registrant to assert trademark rights in order to bring a reverse domain hijacking claim. To prevail, Plaintiff need only demonstrate that the mark was not distinctive or famous when he registered the name, and/or that he did not act in bad faith. See 15 U.S.C. § 1125(d)(1)(A). The ACPA sets forth nine factors for courts to consider in determining a Plaintiff's bad faith, and a registrant's trademark or other intellectual property rights in a domain name is just one of the factors that a court will consider in determining whether a registrant's use is in bad faith and therefore unlawful under the ACPA. See id. § 1125(d)(1)(B)(i). The Court expresses no opinion on whether the Plaintiff may prevail on the merits.

**V.   Conclusion**

Because Plaintiff has standing under 15 U.S.C. §§ 1114(2)(D)(iv) and (v) to bring this action, the Court will deny Defendant's motion to dismiss for lack of subject matter jurisdiction. Accordingly, the Court will lift the stay on Plaintiff's motion for summary judgment, the motion will be reinstated, and Plaintiff's motion shall be deemed filed on the date of entry of this Opinion and the accompanying Order.


| November 30, 2015 | s/ Jerome B. Simandle |
|---|---|
| Date | JEROME B. SIMANDLE<br>Chief U.S. District Judge |