IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

Civil Action No. 1:15-cv-00081-JBS-AMD

Russ Smith,
Plaintiff,
v.
Director's Choice, LLP
Defendant.

## Notice of Motion

1. PLEASE TAKE NOTICE Plaintiff Russ Smith will move before the Honorable Chief Judge Simandle, U.S.D.J. on November 21, 2016 for an Order to Dismiss the Counterclaims against Russ Smith. In support of my motion, I will rely on the attached Memorandum of Law and Affidavit of Russ Smith.

Respectfully submitted,

_Russ Smith_

Russ Smith, *Pro Se*
PO Box 597
Moorestown, NJ 08057
856-581-0704
*dc@foi.com*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

Civil Action No. 1:15-cv-00081-JBS-AMD

Russ Smith,
Plaintiff,
v.
Director's Choice, LLP
Defendant.

---

**Affidavit of Russ Smith
in Support of
Motion to
DISMISS COUNTERCLAIMS AGAINST RUSS SMITH
IN LIEU OF AN ANSWER**

---

I am the Plaintiff, Russ Smith and I assert under penalty of perjury:

1. Plaintiff Russ Smith ("Smith") is a resident of New Jersey at PO Box 597, Moorestown, NJ 08057.

2. HELP.org, LLC was a Limited Liability Company owned by Smith and was dissolved and terminated on December 31, 2015.

3. I registered the <DIRECTORSCHOICE.COM> domain name in 2000 on behalf of an LLC I owned located in Virginia.

4. I accepted an early retirement offer from my federal job in 2013.

5. I relied on public filings and private communications when I made business decisions concerning the domain name <DIRECTORSCHOICE.COM>.

6. I downloaded Exhibits A, C, and E from the Texas Secretary of State web site.

7. Exhibit B are private communications between me and the Texas Secretary of State.

8. Exhibit D was downloaded by me from the web site http://directorschoice.travel.

9. Exhibit F was downloaded by me from the web site http://icann.org

10. Exhibit G was provided to me by the National Arbitration Forum.

1

11.     Exhibit H was an email by me sent to the list of recipients on the date specified in the email.

_Russell Smith_    10/17/2016
Russ Smith      Date

STATE OF New Jersey

COUNTY OF Cape May

I, the undersigned Notary Public, do hereby affirm that Russell Smith personally appeared before me on the 17th day of October 2016 and signed the above Statement as his free and voluntary act and deed.

_signature_
Notary Public

> MICHAEL J ZAMBOTTI
> Notary Public
> State of New Jersey
> My Commission Expires Jun 26, 2020

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

Civil Action No. 1:15-cv-00081-JBS-AMD

Russ Smith,
Plaintiff,
v.
Director's Choice, LLP
Defendant.

---

**Memorandum of Law
in Support of
Motion to
DISMISS COUNTERCLAIMS AGAINST RUSS SMITH
IN LIEU OF AN ANSWER**

**Oral Arguments Requested**

---

TABLE OF CONTENTS

THE PARTIES- 3
COUNTERCLAIMS SHOULD BE DISMISSED - 3
STATEMENT OF FACTS – 3
ARBITRATION AGREEMENT PROHIBITS AMENDMENTS AND LIMITS RELIEF - 5
DIRECTOR'S CHOICE, LLP LACKS STANDING IN CLAIMED TRADEMARK AND
    COMPANY NAME - 6
CLAIMS EXCEED APPLICABLE STATUTE OF LIMITATIONS AND ARE BARRED BY
    LACHES - 6
CLAIMS INVOLVING "RENEWALS" AND "RE-REGISTRATION" DO NOT COMPLY
WITH FRCP 8(a)(2) – 7
ALL CLAIMS ARE BARRED BY EQUITABLE ESTOPPEL – 7
CLAIMS ARE BARRED BY ACQUIESCENCE – 8
COUNTS II AND III DO NOT PROPERLY PLEADS FRAUD IN A TRADEMARK
    APPLICATION AND/OR DO NOT COMPLY WITH FRCP 8(a)(2) – 9
PRAYER FOR RELIEF – 10

1

## TABLE OF AUTHORITIES

ICANN's Universal Domain-Name Dispute Resolution Policu UDRP – 5
National Arbitration Forum UDRP Supplemental Rules – 5
American Almond Products Co. v. Consolidated Pecan Sales Co., 144 F.2d 448, 451 (2d Cir. 1944) – 5
37 C.F.R. §2.71(a) - 6
Title 4, chapter 152, subchapter B, section 5.063 of the Texas Business Organizations Code – 6
*Tandy Corp. v. Malone & Hyde, Inc.,* 769 F.2d 362 (6th Cir. 1985) – 7
*Santana Products, Inc. v. Bobrick Washroom Equipment, Inc.,* 249 F.Supp. 2d 463 (M.D. Pa. 2003), affirmed, 401 F.3d 123 (3d Cir. 2005), cert. denied, 126 S. Ct. 734 (2005)] - 7
Fed R. Civ. P. 8(a)(2) – 7, 10
*Hampton v. Paramount Pictures Corp.,* 279 F.2d 100, 104 (9th Cir. 1960) - 7
*Seller Agency Council, Inc. v. Kennedy Center for Real Estate Education, Inc.,* No. 08-56791 (9th Cir. 2010) – 9
*Kathleen Hiraga v. Sylvester J. Arena,* 90 USPQ2d 1102 (TTAB 2009) [precedential] – 10
*re Bose Corp.,* 580 F.3d 1240 (Fed. Cir. 2009) – 10
*Smith Int'l, Inc. v. Olin Corp.,* 209 USPQ 1033, 1044 (T.T.A.B. 1981) – 10

## TABLE OF EXHIBITS

EXHIBIT A - Director's Choice, LLP 2002 application for registered limited liability partnership - 3
EXHIBIT B – Communication between Smith and the Texas Secretary of State's office concerning the corporate records of Director's choice, LLP - 3
EXHIBIT C – Assumed names registrations list for Director's Choice, LLP from Texas Secretary of State – 4
EXHIBIT D – Excerpt from Director's Choice, LLP's web site http://directorschoice.travel – 4
EXHIBIT E – Director's Choice, LLP's Texas trademark application for DIRECTOR'S CHOICE TOUR AND TRAVEL from 2006 – 4
EXHIBIT F – ICANN'S Universal Domain-Name Dispute Resolution policy (UDRP) – 4, 5
EXHIBIT G – National Arbitration Forum UDRP Supplemental Rules excerpt - 5

Plaintiff Russ Smith ("Smith") alleges as follows:

## THE PARTIES

1. Plaintiff Russ Smith ("Smith") is a resident of New Jersey at PO Box 597, Moorestown, NJ 08057. An affidavit of Russ Smith is attached and supports this motion.

2. HELP.org, LLC was a Limited Liability Company owned by Smith and was dissolved and terminated on December 31, 2015 (Smith affidavit at 2).

3. On information and belief Director's Choice, LLP is a Limited Liability Partnership existing under the laws of the State of Texas having a principal place of business at 10701 Upland Ave., Lubbock, Texas 79424 and was formed in 2002.

## COUNTERCLAIMS SHOULD BE DISMISSED

4. Smith hereby incorporates the allegations of paragraphs 1 through 3 as if set forth here in full.

5. All counterclaims should be dismissed. Director's Choice, LLP failed to state a claim upon which relief can be granted because:

(a) Director's Choice, LLP agreed not to amend the complaint and to limit their request to relief to transfer of the disputed domain name when they filed arbitration,
(b) Director's Choice, LLP already won the domain arbitration dispute and the domain is transferred to them automatically should this case be terminated. Asking this Court to provide relief in the form of transferring the disputed domain name is redundant,
(c) Director's Choice, LLP lacks standing in the claimed trademark,
(d) The claims are barred by estoppel by laches, equitable estoppel, and/or acquiescence,
(e) Director's Choice, LLP failed to properly plead fraud in a trademark application, and
(f) Director's Choice, LLP failed to state claims with enough specificity and the pleading does not comply with Fed R. Civ P. 8(a)(2).

## STATEMENT OF FACTS

6. Smith hereby incorporates the allegations of paragraphs 1 through 5 as if set forth here in full.

7. On information and belief Director's Choice, LLP was formed in 2002 (Exhibit A) and not 1997 as claimed in their pleadings. In 2002 paperwork was filed with the Texas Secretary of State claiming a conversion from Director's Choice, Inc. to Director's Choice, Limited Liability Partnership. However, a conversion of that type is not permitted under Texas law and the Texas Secretary of State assumes a new legal entity consisting of a general partnership was formed (Exhibit B).

8. No trademark assignments were publicly filed to assign trademarks to Director's Choice, LLP when it was formed in 2002.

9. Starting in or about 2002, Director's Choice, LLP, through one of its employees or an agent, made numerous attempts to purchase the Disputed Domain Name from Smith and/or his business entities and did not notify Smith of any trademark claims in any of these communications.

10. On February 28, 2003 Director's Choice, LLP filed an assumed name certificate for "DIRECTOR'S CHOICE." This certificate had expired by the time they filed the domain arbitration complaint in 2014 and is still expired (Exhibit C).

11. On Director Choice, LLP's current web site at http://directorschoice.travel it states (Exhibit D):

*In 2005 (after being known as Director's Choice™, DC Festivals and Advantage Tours), Director's Choice Tour & Travel™ (DCTT) became the official name of the company.*

12. In 2006 Director's Choice LLP filed a trademark application in Texas for "DIRECTOR'S CHOICE TOUR AND TRAVEL" for the following goods and services with a first use date of 12/1/2006 (Exhbit E):

*The mark is used in connection with group travel services. Director's Choice, LLP handles travel arrangements for groups in all aspects from booking travel dates, arranging transportation, and securing lodging.*

13. Director's Choice, LLP filed a federal trademark application in 2014 for "DIRECTOR'S CHOICE" with first use date of April 1997 for the goods and services:

*Arranging travel tours for music organizations; Organisation of travel.*

14. In this pleading Director's Choice, LLP claims (paragraphs 15 and 16):

*Director's Choice continues to provide its travel and performance services to music educators, bands, choir groups and other customers across the United States. Director's Choice also continues to produce proprietary concert events in venues around the United States. Since launching the business, Director's Choice's clientele has referred to the company and/or its services as "Director's Choice", among other names.*

15. Director's Choice, LLP filed a domain arbitration complaint in 2014 and agreed to comply with the Internet of Assigned Name and Number (ICANN) Corporation Universal Domain-Name Dispute Resolution Policy (UDRP) (Exhibit E).

16. Director's Choice, LLP chose the National Arbitration Forum (NAF) as the dispute resolution provider for their UDRP complaint and agreed to their UDRP Supplemental Rules, including section 7 (Exhibit F).

17. The disputed domain name was registered in 2000 by Smith for an LLC he operated in Virginia. (Smith Affidavit at 3).

18. Smith took early retirement from his job in 2013 to operate his Internet businesses full time (Smith Affidavit at 4).

19. Smith relied on public trademark and Assumed Name filings and private communications of Director's Choice, LLP when making business decisions related to the disputed domain name (Smith Affidavit at 5).

20. Smith notified Director's Choice, LLP in December 2014 that he was setting up a movie review web site at the disputed domain name and applying for a trademark for DIRECTOR'S CHOICE.

21. Smith filed form AO120 in February 2015 (Docket item 5) that provided further notification of Smith's trademark application for DIRECTOR'S CHOICE with the US Patent and Trademark Office.

### ARBITRATION AGREEMENT PROHIBITS AMENDMENTS AND LIMITS RELIEF

22. Smith hereby incorporates the allegations of paragraphs 1 through 21 as if set forth here in full.

23. When Director's Choice, LLP initiated arbitration they agreed to limit their relief to the transfer of the domain name. The UDRP (Exhibit F) section 4(i) states:

*__Remedies.__ The remedies available to a complainant pursuant to any proceeding before an Administrative Panel shall be limited to requiring the cancellation of your domain name or the transfer of your domain name registration to the complainant.*

24. When Director's Choice, LLP chose the National Arbitration Forum as their dispute provider they agreed to the NAF Supplemental rules that states in Section 7 (Exhibit G):

*No Amendments to the Complaint.*

25. UDRP Section 4(k) sates:

*Availability of Court Proceedings. The mandatory administrative proceeding requirements set forth in Paragraph 4 shall not prevent either you or the complainant from submitting __the dispute__ to a court of competent jurisdiction for independent resolution before such mandatory administrative proceeding is commenced or after such proceeding is concluded. [Emphasis added].*

26. When Director's Choice, LLP decided to file arbitration rather than a court case they waived their rights to ask for damages, waived their right to amend the complaint, and agreed to allow Smith to have a court review of the decision if it was not favorable to him. Director's Choice, LLP may have a court review of "the dispute" but in this case they won arbitration so such a review is moot. Just because Smith decided to implement the agreed-upon provision of the UDRP for a court review does not mean Director's Choice, LLP can now amend "the dispute," bring in new claims, or ask for damages. In American Almond Products Co. v. Consolidated Pecan Sales Co., 144 F.2d 448, 451 (2d Cir. 1944) the Court stated:

*Arbitration may or may not be a desirable substitute for trials in courts; as to that the parties must decide in each instance. But when they have adopted it, they must be content with its informalities; they may not hedge it about with those procedural limitations which it is precisely its purpose to avoid. They must content themselves with looser approximations to the enforcement of their rights than those that the law accords them, when they resort to its machinery.*

27. The relief requested for the transfer of the disputed domain was already won in arbitration. The domain automatically gets transferred unless a court order is obtained in this case to reverse the transfer. The request to transfer the domain name is redundant.

28. The counterclaims are a substantial amendment to the original complaint where some issues have disappeared and others have appeared or changed substantially. Amendments to the complaint and relief beyond the transfer of the disputed domain name are barred by the arbitration agreement.

### DIRECTOR'S CHOICE, LLP LACKS STANDING IN CLAIMED TRADEMARK AND COMPANY NAME

29. Smith hereby incorporates the allegations of paragraphs 1 through 28 as if set forth here in full.

30. Director's Choice, LLP's trademark application at the US Patent and Trademark Office for which all their claims are based is for the claimed goods and services "Arranging travel tours for music organizations; Organisation of travel" published for opposition on December 9, 2014.

31. The goods and services are greatly expanded in the Counterclaims to include "proprietary concert events" and other services not found in their application. Director's Choice lacks standing in these newly claimed goods and services. [See Trademark Rule 2.71(a), 37 C.F.R. §2.71(a), restricts amendments to the identification of goods or services as follows, "The applicant may amend the application to clarify or limit, but not to broaden, the identification of goods and/or services."]

32. Director's Choice, LLP's expanded goods and services also makes a claims that "DIRECTOR'S CHOICE" refers to their company name. However, their assumed name certificate for "Director's Choice" expired (Exhibit C) and they no longer have the legal authority to refer to themselves as "Director's Choice." Title 4, chapter 152, subchapter B, section 5.063 of the Texas Business Organizations Code states:

*The name of a domestic or foreign limited liability partnership must contain: the phrase "limited liability partnership" or an abbreviation of the phrase.*

Therefore, Director's Choice, LLP lacks standing in any claim involving their company being called "Director's Choice."

### CLAIMS EXCEED APPLICABLE STATUTE OF LIMITATIONS AND ARE BARRED BY LACHES

33. Smith hereby incorporates the allegations of paragraphs 1 through 32 as if set forth here in full.

34.     All possible statutes of limitations have run out for any Lanham Act claim related to the registration of the disputed domain name as it was registered in 2000. When a claim is brought outside the applicable state statute of limitations, there is a presumption that laches applies, and the burden is on the plaintiff to prove it does not. [*Under equitable principles the statute of limitations applicable to analogous actions at law is used to create a "presumption of laches." This principle "presumes" that an action is barred if not brought within the period of the statute of limitations: Tandy Corp. v. Malone & Hyde, Inc., 769 F.2d 362 (6th Cir. 1985); Once the statute of limitations has expired, the defendant "enjoys the benefit of a presumption of inexcusable delay and prejudice:" Santana Products, Inc. v. Bobrick Washroom Equipment, Inc., 249 F.Supp. 2d 463 (M.D. Pa. 2003), affirmed, 401 F.3d 123 (3d Cir. 2005), cert. denied, 126 S. Ct. 734 (2005)*].

35.     The disputed domain was registered in 2000, 2 years before Director's Choice, LLP even existed. This inexcusable and unexplained delay resulted in Smith thinking he owned the domain name free and clear to be used by his business. During this period Smith made the business decision to accept an early retirement offer from his federal job to operate his Internet businesses full time. Smith had the expectation at that time that there would not be any claims against domain names he registered more than 12 years prior. Smith is subject to undue prejudiced by claims made at this late date.

## CLAIMS INVOLVING "RENEWALS" AND "RE-REGISTRATION" DO NOT COMPLY WITH FRCP 8(a)(2)

36.     Smith hereby incorporates the allegations of paragraphs 1 through 35 as if set forth here in full.

37.     The Counterclaims make vague references to terms such as "renewal" and "re-registration" and appear to use them interchangeably even though they mean different things and must be defined further to understand what is meant. The references are too vague to answer and they fail to provide enough specifics or dates needed to determine if they are within the applicable statute of limitations. Therefore, the portions of the pleadings related to "renewals" and "re-registration" of the disputed domain name do not comply with Fed R. Civ. P. 8(a)(2).

## ALL CLAIMS ARE BARRED BY EQUITABLE ESTOPPEL

38.     Smith hereby incorporates the allegations of paragraphs 1 through 37 as if set forth here in full.

39.     The elements of equitable estoppel are:

(a) the plaintiff must know the facts of the defendant's infringing conduct;
(b) the plaintiff must intend that its conduct shall be acted on or must so act that the defendant has a right to believe that it so intended;
(c) the defendant must be ignorant of the true facts; and
(d) the defendant must rely on the plaintiff's conduct to its injury.

*Hampton v. Paramount Pictures Corp.*, 279 F.2d 100, 104 (9th Cir. 1960).

40.     In this case:

(a) Director's Choice, LLP knew Smith registered and used the disputed domain name,
(b) Director's Choice, LLP repeatedly contacted Smith and asked that the domain be put for sale without making any trademark claims,
(c) Director's Choice, LLP never attempted to register a trademark for "DIRECTOR'S CHOICE" until 14 years after Smith registered the domain name, registered "DIRECTOR'S CHOICE" as an assumed name, later allowed that assumed name registration to expire, and announced at its web site that it no longer referred to itself as "Director's Choice."
(d) Smith relied on these actions and offered the domain name for sale, ran ads at the web site, and took steps to establish lawful use of the domain name by setting up a movie review web site and obtaining a trademark. This has resulted in the arbitration dispute and these Counterclaims and has caused the domain name to be locked so it cannot be transferred or sold to another party.

41.     Director's Choice, LLP deceived Smith by making him believe there were no trademark claims and that selling and using the domain was lawful. Director's Choice, LLP went so far as to hire agents to hide their identity and use an agent to try to buy the domain name. This made Smith believe multiple parties were inquiring about the domain. This also resulted in Smith being unaware that Director's Choice, LLP was represented by trademark counsel. Once Smith placed the domain up for sale, at the request of Director's Choice, LLP themselves, Smith was served with an arbitration dispute that claimed putting the domain up for sale was bad faith.

42.     Also in this case:

(a) Director's Choice, LLP knew in December 2014 that Smith intended to develop a web site at the disputed domain name (Exhibit H) and apply for a trademark. They were again reminded in February 2015 when form AO120 was filed (Docket item 5).
(b) Director's Choice, LLP made no complaints, sent no cease and desist notice, did not file a request for an injunction with this Court, or even opposed the registration at the US Patent and Trademark Office. During this period the web site was available on the public Internet and updated on a regular basis. Only after the registration certificate was placed on the docket did Director's Choice, LLP take any action.
(c) Smith was unaware that Director's Choice, LLP would expand their claim for goods and services to include "proprietary musical performances" because such a claim was not made in their trademark application, and
(d) Smith relied on the published claims of Director's Choice, LLP to develop a non-competing use of the disputed domain in order to establish lawful use of that domain. This has resulted in the Counterclaims and a large amount of legal work which is disrupting Smith's business.

43.     For these reasons all claims are barred by the doctrine of equitable estoppel.

### CLAIMS ARE BARRED BY ACQUIESCENCE

44.     Smith hereby incorporates the allegations of paragraphs 1 through 43 as if set forth here in full.

45.     The elements of Acquiescence are:

(a) the trademark owner actively represented that it would not assert a right or a claim;
(b) the delay between the active representation and assertion of the right or claim was not excusable; and
(c) the delay caused the defendant undue prejudice.

*Seller Agency Council, Inc. v. Kennedy Center for Real Estate Education, Inc.*, No. 08-56791 (9th Cir. 2010).

46. In this case:

(a) Director's Choice, LLP:

i. repeatedly contacted Smith and asked that the domain be put for sale,
ii. never attempted to register a trademark for "DIRECTOR'S CHOICE" until 14 years after Smith registered the domain name,
iii. registered "DIRECTOR'S CHOICE" as an assumed name and later allowed that assumed name registration to expire, and
iv. announced at its web site that it no longer is referred to as "Director's Choice."

(b) Director's Choice, LLP delayed 14 years to file any complaint at all or make any notification of trademark claims. The delay has never been explained.
(c) Smith accepted an early retirement offer from his day job in order to run his Internet businesses full time and is subject to undue prejudiced by claims made at this late date.

47. Also in this case

(a) Director's Choice, LLP filed a trademark application for "DIRECTOR'S CHOICE" claiming goods and services as "Arranging travel tours for music organizations; Organisation of travel."
(b) Smith notified Director's Choice, LLP in December 2014 of his trademark application and use of the disputed domain name. Director's Choice, LLP did nothing for many months as Smith developed the web site,
(c) Now Director's Choice, LLP wants to expand their claimed goods and services so they can create another cause of action to try to have the disputed domain name transferred to them causing Smith undue prejudice.

48. For these reasons all counterclaims should be dismissed since the claims are barred by the doctrine of acquiescence.

### COUNTS II AND III DO NOT PROPERLY PLEADS FRAUD IN A TRADEMARK APPLICATION AND/OR DO NOT COMPLY WITH FRCP 8(a)(2)

49. Smith hereby incorporates the allegations of paragraphs 1 through 48 as if set forth here in full.

50. Count II involves the "first use anywhere" field in the trademark application and the specimen.

51. In the "first use anywhere" field Smith put the registration date of the domain name and in the "First use in commerce" field put the date in 2015 when the domain name was first developed. The "first use anywhere" date applies to a different LLC Smith operated in Virginia back in 2000 when the domain was registered. The Trademark Trial and Appeal Board has found that a false statement regarding the first use date does not constitute fraud "because the first use date is not material to the Office's decision to approve a mark for publication." *Kathleen Hiraga v. Sylvester J. Arena*, 90 USPQ2d 1102 (TTAB 2009) [precedential].

52. The goods and services are for a web site and Smith used a screen shot of the web site as a specimen. Director's Choice, LLP used the same type of specimens for their trademark applications and so do many other applicants so it is unclear what is "fraudulent" about submitting a screen shot of a web site as a specimen.

53. Director's Choice, LLP indicated Smith added content to the web site after the application date. It is claimed that this added information was somehow "fraudulent" because the information is not original content. However, it is unclear how this is "fraud" since no claim was made that the posted information would be "original." The claimed goods and services are "Entertainment services, namely, providing on-line reviews of movies" and the pleadings admit the web site contains on-line reviews of movies.

54. It is unclear what actions Director's Choice, LLP claims are fraud or why it would be considered fraud or be material to the registrability of the mark.

55. It is also unclear why these counts include a reference to a "vexatious lawsuit" when Director's Choice, LLP agreed to a court review of the arbitration decision at the time they filed the arbitration complaint.

56. In re Bose Corp., 580 F.3d 1240 (Fed. Cir. 2009) :

*A party seeking cancellation of a trademark registration for fraudulent procurement bears a heavy burden of proof. W.D. Byron & Sons, Inc. v. Stein Bros. Mfg. Co., 377 F.2d 1001, 1004 (CCPA 1967). Indeed, "the very nature of the charge of fraud requires that it be proven 'to the hilt' with clear and convincing evidence. There is no room for speculation, inference or surmise and, 2008-1448 3 obviously, any doubt must be resolved against the charging party." Smith Int'l, Inc. v. Olin Corp., 209 USPQ 1033, 1044 (T.T.A.B. 1981)...*

*Thus, we hold that a trademark is obtained fraudulently under the Lanham Act only if the applicant or registrant knowingly makes a false, material representation with the intent to deceive the PTO.*

57. Counts II and III do not comply with the Fed R. Civ. P. 8(a) since they are not cognizant claims and do not plead fraud in a trademark application nor does it explain how it would affect the claimed rights of Director's Choice, LLP.

**PRAYER FOR RELIEF**

10

58.  All Counterclaims should be dismissed with prejudice.

Respectfully submitted,

/s/ Russ Smith

Russ Smith, *Pro Se*
PO Box 597
Moorestown, NJ 08057
856-581-0704
dc@foi.com