IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RUSS SMITH, | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | |
| v. | Civil Action No. 15-00081 (JBS/AMD) |
| DIRECTOR'S CHOICE, LLP | |
| Defendant. | **OPINION** |

APPEARANCES:

Mr. Russ Smith
P.O. Box 597
Moorestown, NJ 08057
     Plaintiff Pro Se

Matthew A. Kaplan, Esq.
ABBOTT BUSHLOW & SCHECHNER LLP
70-11 Fresh Pond Road
Ridgewood, NJ 11385
     Attorney for Defendant

**SIMANDLE, District Judge:**

## I.    INTRODUCTION

This case involves a dispute between pro se plaintiff Russ

Smith and Director's Choice, LLP ("Director's Choice") over

Smith's registration and use of the domain name

<directorschoice.com>. Smith brings claims against Director's

Choice under the Anti-Cybersquatting Consumer Protection Act

("ACPA"), 15 U.S.C. § 1114(2)(D)(v), challenging an arbitration

panel's decision that Director's Choice should own the domain

name. Director's Choice, in turn, brings counterclaims against

Smith and third party claims against HELP.org under the ACPA and the Lanham Act. Presently before the Court are motions by Smith to dismiss the counterclaims against him [Docket Item 71] and to supplement the briefing on that motion [Docket Item 106]. For the reasons that follow, the Court will deny both motions.

## II.  BACKGROUND[1]

Plaintiff/Counterclaim Defendant Russ Smith operates a variety of business entities that develop web sites that generate income through the display of advertisements. (Third Amended Complaint ¶ 1.) These entities regularly buy and sell both web sites and domain names. (Id.) On March 7, 2000, a now-dissolved business entity operated by Smith registered the domain name <directorschoice.com> ("domain name"). (Id. ¶ 4.) The domain name registration was at some point transferred to HELP.org, LLC ("HELP.org"), of which Smith is the owner. The domain name is currently owned by Smith and operates as a movie review web site. (Id. ¶ 23.)

---

[1] The Court accepts as true for the purposes of the instant motions the following facts as alleged in the Third Amended Complaint and the Answer and Counterclaims [Docket Items 69 and 70]. The Court also considers certain of the exhibits attached to Smith's motion to dismiss [Docket Item 71] that are either "integral to or explicitly relied upon in the complaint" or matters of public record. Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997). The Court may consider these documents on a motion to dismiss without converting the motion to one for summary judgment. Schmidt, 770 F.3d at 249.

Defendant/Counterclaim Plaintiff Director's Choice is a Texas-based company that operates performance opportunities, concert events, and travel for music education programs across the country. (Counterclaim and Third Party Complaint ¶¶ 10-12, 15.) The company was created in 1996 and began hosting concerts and organizing music education travel in 1997. (Id.) Its clientele refer to the company and/or its services as "Director's Choice," and the company "developed a widespread reputation and enjoys a high degree of recognition in the relevant marketplace and with the general public" using that name. (Id. ¶¶ 16-17.)

In 2002, Director's Choice contacted Smith for the first time to inquire about purchasing the domain name. (Id. ¶ 29.) Over the next twelve years, Director's Choice agents and employees intermittently contacted Smith via email seeking to purchase the domain name. (Id. ¶¶ 29-35.) Director's Choice registered the domain name <directorschoicetourandtravel.com> in October, 2005 and began operating a website to market and sell its services at that name at least as early as April, 2006. (Id. ¶¶ 14-15.)

On July 14, 2014, Director's Choice filed two trademark applications with the United States Patent and Trademark Office ("USPTO"): the first for the mark DIRECTOR'S CHOICE for "arranging travel tours for music organizations; organization of

travel" and the second for the mark DIRECTOR'S CHOICE TOUR &
TRAVEL for "arranging travel tours for music organizations;
organization of travel." (Id. ¶ 18.) The DIRECTOR'S CHOICE TOUR
& TRAVEL mark matured to registration on February 24, 2015. (Id.
¶ 19.) Smith filed a notice of opposition with the Trademark
Trial and Appeal Board ("TTAB") to the DIRECTOR'S CHOICE mark;
the TTAB has suspended proceedings regarding that mark pending a
determination in this case. (Id. ¶¶ 20-21.)

Smith placed the domain name up for sale for $45,000 in
August, 2014; Director's Choice filed a complaint regarding the
domain name on November 18, 2014 against HELP.org pursuant to
the Internet Corporation for Assigned Names and Numbers'
("ICANN") Uniform Domain Name Dispute Resolution Policy ("UDRP")
with the National Arbitration Forum. (Id. ¶ 36.) On December 22,
2014, a three-member administrative panel with the National
Arbitration Forum ("NAF") agreed with Director's Choice that
HELP.org did not have any rights or legitimate interests in the
disputed domain name and ordered the transfer of the domain name
from HELP.org to Director's Choice. (Id. ¶ 37.) Smith alleges
that Director's Choice made false statements and withheld
material information before the arbitration panel. (Third Am.
Compl. ¶ 25.) Shortly thereafter, Smith posted a website at the
disputed domain name purporting to offer movie reviews.
(Counterclaims ¶¶ 38-41.)

On December 25, 2014, HELP.org filed a use-based trademark application with the USPTO for the mark "Director's Choice" for "entertainment services, namely, providing on-line reviews of movies." (Id. ¶ 42.) Director's Choice alleges that HELP.org made false claims to the USPTO as part of its trademark application and that the Trademark Examiner allowed the application (Registration No. 4,821,299 ("the '299 Registration")) to mature to registration on September 29, 2015 based on those representations. (Id. ¶¶ 43-44.)

Also around the same time, on January 7, 2015, Smith filed a two-count Complaint [Docket Item 1] against Director's Choice under the ACPA, 15 U.S.C. § 1114(2)(D)(iv) and (v),[2] arguing that his use of the domain name is lawful, and that Defendant made materially false statements to the UDRP panel which caused the panel to order the domain name transferred to Defendant. Smith challenges the decision of the UDRP panel and seeks a declaration of his lawful use of the domain name (Count One), and a declaration that the Defendant made materially false statements to the UDRP panel (Count Two). He asks this Court to enjoin the transfer of the domain name to Director's Choice, and for an award of compensatory damages in the amount of $2,300 and statutory damages between $1,000 and $100,000. (Third Am. Compl.

---

[2] The Complaint was subsequently amended on February 6, 2015 [Docket Item 7] and September 15, 2016 [Docket Item 69].

¶¶ 39-31.)[3] Director's Choice filed a six-count Counterclaim against Smith and Third Party Complaint against HELP.org, alleging, inter alia, that Smith and HELP.org violated the ACPA, 15 U.S.C. § 1125(d), infringed on Director's Choice's trademark, and violated the Lanham Act, 15 U.S.C. § 1125(a), and seeking a declaration that Smith's trademark "Director's Choice" is invalid and unenforceable. (Counterclaims ¶¶ 49-96.)

After the filing of this action, on December 31, 2015, Smith dissolved HELP.org and assigned its rights and goodwill in the "Director's Choice" trademark to himself individually, allegedly hours after Director's Choice filed its Amended Answer to the First Amended Complaint, Counterclaims and Third Party Complaint. (Counterclaims ¶¶ 46-48.)

Smith filed the instant motion to dismiss Director's Choice's counterclaims with prejudice [Docket Item 71], which Director's Choice opposes [Docket Item 74]. Smith later filed a motion to supplement his motion to dismiss [Docket Item 106], which Director's Choice also opposes [Docket Item 116].[4] Both motions are now fully briefed, and the Court will decide them without holding oral argument pursuant to Fed. R. Civ. P. 78.

---

[3] The domain name does not appear to have been transferred to Director's Choice.

[4] Also pending before the Court are two motions for summary judgment by Smith [Docket Items 83 & 91] which will not be decided now.

**III. STANDARD OF REVIEW**

When considering a motion to dismiss counterclaims for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6), a court must accept all well-pleaded allegations in the counterclaims as true and view them in the light most favorable to the nonmoving party. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). Courts apply the same standard to counterclaims as they do to complaints in ruling on a Rule 12(b)(6) motion. Tyco Fire Prods. LP v. Victaulic Co., 777 F. Supp. 2d 893, 898 (E.D. Pa. 2011). A motion to dismiss may be granted only if a court concludes that the movant has failed to set forth fair notice of what the claim is and the grounds upon which it rests that make such a claim plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Although the court must accept as true all well-pleaded factual allegations, it may disregard any legal conclusions in the complaint. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Iqbal, 556 U.S. at 678.

In addition, the complaint must contain enough well-pleaded facts to show that the claim is facially plausible. This "allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "If the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." Id. at 679 (internal quotation marks and citation omitted).

## IV. DISCUSSION

Director's Choice's Answer to the Third Amended Complaint [Docket Item 70] asserts six counterclaims against Smith and third party claims against HELP.org: violation of ACPA, 15 U.S.C. § 1125(d) (Count I); declaratory judgment that Smith's mark for "Director's Choice" is invalid and unenforceable (Count II); cancellation of that mark (Count III); trademark infringement (Count IV); unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a) (Count V); and false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1125(a) (Count VI). Smith asserts in the instant motion that all counterclaims should be dismissed pursuant to Rule 12(b)(6) with prejudice. The Court will address each of Smith's points in turn.

### A. The arbitration agreement does not bar Director's Choice from asserting counterclaims or seeking additional relief.

First, Smith argues that the counterclaims must be dismissed because they are barred by Director's Choice's

election to first file a domain name arbitration pursuant to the URDP. In particular, Smith argues "[w]hen Director's Choice, LLP decided to file arbitration rather than a court case they waived their rights to ask for damages, waived their right to amend the complaint, and agreed to allow Smith to have a court review of the decision if it was not favorable to him." (Pl. Br. at ¶¶ 22-28.) In other words, Smith contends that Director's Choice cannot "amend its complaint" and raise new claims or seek new remedies in this action that were not asserted before the NAF panel, and cannot seek judicial review of the panel's decision because it was favorable to them and thus is "moot."

Smith's position misreads the URDP. In the first instance, the URDP does not prohibit Director's Choice from ever seeking judicial adjudication of its claims against him; the policy explicitly allows "either you or the complainant" to "submit[] the dispute to a court of competent jurisdiction for independent resolution before such mandatory administrative proceeding is commenced or after such proceeding is concluded." (URDP [Exhibit F to Pl. Br.] ¶ 4(k) (emphasis added).) Secondly, while the URDP prohibits amendments to complaints and limits the remedies available before an arbitration panel, it provides that "[a]ll other disputes . . . regarding your domain name registration" may be brought before a court. (URDP ¶ 5.) In other words, the URDP does not prohibit a party from asserting new non-ICANN

claims, like the Director's Choice counterclaims under the Lanham Act, or seeking new relief unavailable in the prior arbitration, like the cancellation of Smith's trademark or a declaration that it is unenforceable, in a separate action. Nowhere does the URDP, or any other authority, require Director's Choice to "terminate" the arbitration proceeding and request to vacate the arbitration panel's decision in order to assert other of its rights under federal law. Accordingly, Director's Choice's counterclaims will not be dismissed on the basis of its participation in the arbitration process.

### B. Director's Choice has standing to assert claims based on the "Director's Choice" company name.

Second, Smith contends that the counterclaims must be dismissed because Director's Choice does not have standing to assert any claim based on the "Director's Choice" company name. Specifically, Smith contends that because the goods and services provided by the company as described in the counterclaims "are greatly expanded" and "not found in their application" before the USPTO, because the company does not hold an "assumed name certificate" in Texas, and because the company allegedly improperly converted its corporate structure from a corporation to a limited liability company, it cannot assert its interest in the name "Director's Choice" before this Court. (Pl. Br. at ¶¶ 29-32; see also Pl. Reply Br. at ¶¶ 6-10.)

First, the fact that Director's Choice provided more details about the goods and services it offers in these counterclaims than it did in its USPTO trademark application will not invalidate its standing to assert trademark claims here.[5] Trademark rights may adhere not only through federal trademark registration but also through the common law; while the scope of rights under federal trademark registration "extends only so far as the goods or services noted in the registration certificate," common law trademark rights accrue through adoption and actual use of the mark. See Natural Footwear Ltd. v. Hart, Schaffner & Marx, 760 F.2d 1383, 1394-96 (3d Cir. 1985), cert. denied, 474 U.S. 920 (1985). In other words, it does not harm Director's Choice's position that it is entitled to exclusive use of the phrase "Director's Choice" because it has alleged more commercial activity in the marketplace in connection with that name in the counterclaims than it did in its USPTO application; in fact, it strengthens the company's position that it has a protectable interest in the name "Director's Choice."

Second, Smith's arguments about the form of Director's Choice's name or corporate structure are immaterial to the

_____

[5] Moreover, Director's Choice's allegations are plainly not, as Smith asserts, an improper attempt by Defendant-Counterclaim Plaintiff to amend its trademark application before the USPTO in violation of Trademark Rule 2.71(a).

current dispute and are not cause to dismiss the counterclaims.

Smith argues that because "their assumed name certificate for 'Director's Choice' expired . . . they no longer have the legal authority to refer to themselves as 'Director's Choice.'" (Pl. Br. at ¶ 32.)[6] However, even assuming it is true that Director's Choice does not hold a current Texas Assumed Name Certificate, that lapse does not negate its ability to assert trademark claims. Smith has not explained, and the Court cannot otherwise discern, how or why such a state filing would affect Director's Choice's rights under federal or common trademark law. Likewise, the Court will not dismiss Director's Choice's counterclaims on the allegation that the company improperly converted its

_____

[6] Smith's supplemental pleading to his motion to dismiss [Docket Item 106] concern the assumed name registration of the name "Directors Choice" (with no apostrophe) by an individual in Texas, information from a "Directors Choice" website, and other documents. The Court has not considered these documents because they are not germane to the counterclaims and exceed the bounds of the material a court may properly consider on a motion to dismiss. See n.1, <u>supra</u>. Smith's motion to supplement his motion to dismiss will be denied. Moreover, this effort by Smith to add new grounds for his fully briefed motion adds undue procedural confusion and complexity. Plaintiff has amended his complaint three times, each necessitating an Answer and Counterclaim or other dismissal motion by Defendant. [<u>See</u> Docket Items 7, 29, 37, 49, 65, 69 & 70.] By seeking to add yet more evidence for consideration in his latest motion to dismiss, he prolongs resolution and actual joinder of issues so that the adjudication can be conducted. This strategy also causes undue costs and consumption of time for what has become, in the words of Defendant's counsel, "perpetual motion practice." (Def. Br. at 2.) Under Rule 1, Fed. R. Civ. P., both parties have the duty to conduct this litigation in a manner promoting its efficient resolution.

corporate structure. It is not the role of this out-of-state federal court to second-guess the actions of the Office of the Secretary of State for the State of Texas, which is not a party.

Accordingly, because there is no reason to find, on the face of the counterclaims, that Director's Choice does not have standing to assert claims based on the "Director's Choice" company name, the Court will not dismiss the counterclaims on this basis.

## C. Director's Choice's counterclaims are not barred by the statute of limitations, laches, acquiescence, or equitable estoppel.

Next, Smith raises in his Rule 12(b)(6) motion the affirmative defenses of the statute of limitations, laches, acquiescence, and equitable estoppel to Director's Choice's counterclaims. Smith argues that Director's Choice's claims are time-barred because "the disputed domain was registered in 2000, 2 years before Director's Choice, LLP even existed" and Director's Choice waited too long to assert its right to the domain name. (Pl. Br. at ¶ 35.) He also asserts that Director's Choice's claims are barred by the equitable doctrines of acquiescence and estoppel because, inter alia, Director's Choice knew that Smith had registered the disputed domain name but did not try to register a trademark for "Director's Choice" until fourteen years later, because Smith relied on Director's Choice's alleged representations that it was "no longer

refer[ing] to itself as 'Director's Choice,'" and because Director's Choice "made no complaints, sent no cease and desist notice, did not file a request for an injunction with this Court, or even opposed the registration at the US Patent and Trademark Office." (Id. ¶¶ 40-47.)

In the first instance, Smith cannot, as a matter of law, raise a statute of limitations or laches defense to the counterclaims seeking invalidity and cancellation of the '299 Registration "Director's Choice" mark, Counts II and III. "[T]he language of the Lanham Act makes it clear that a claim for cancellation of a mark based on fraudulent procurement and a defense to an otherwise incontestable mark on a similar ground may be asserted at any time." Marshak v. Treadwell, 240 F.3d 184, 193 (3d Cir. 2001)(emphasis added).

Nor is it apparent from the face of Director's Choice's counterclaims that Smith will prevail on the laches, acquiescence, or equitable estoppel defenses he raises to the remainder of the counterclaims. "On a Rule 12(b)(6) motion, an affirmative defense . . . is appropriately considered only if it presents an insuperable barrier to recovery by the plaintiff." Flight Sys., Inc. v. Elec. Data Sys. Corp., 112 F.3d 124, 127 (3d Cir. 1997). A motion to dismiss under Rule 12(b)(6) on affirmative defense grounds should be granted only "where the complaint facially shows noncompliance with the limitations

period and the affirmative defense clearly appears on the face

of the complaint." Oshiver v. Levin, Fishbein, Sedran & Berman,

38 F.3d 1380, 1384 n. 1 (3d Cir. 1994). If the bar is not

apparent on the face of the complaint, then it may not afford

the basis for dismissal. Schmidt, 770 F.3d at 249.

In order to prevail on the laches or acquiescence

affirmative defenses, Smith must show that Director's Choice

inexcusably delayed asserting its rights in the name, and that

he was prejudiced by that delay. See Fox v. Millman, 45 A.3d

332, 341 (N.J. 2012) ("Laches is an equitable doctrine,

operating as an affirmative defense that precludes relief when

there is an unexplained and inexcusable delay in exercising a

right, which results in prejudice to another party."); Covertech

Fabricating, Inc. v. TVM Building Prods., Inc., 855 F.3d 163,

175 (3d Cir. 2017) ("Relevant considerations [to the equitable

defense of acquiescence], required as elements in a number of

our sister Circuits, may include whether (1) the senior user

actively represented that it would not assert a right or a

claim; (2) the senior user's delay between the active

representation and assertion of the right or claim was not

excusable; and (3) the delay caused the defendant undue

prejudice." (internal punctuation omitted)). Because the Lanham

Act does not specify its own statute of limitations, the clock

by which "delay" is measured runs by reference to an analogous

state law cause of action. <u>Santana Prods., Inc. v. Bobrick</u>
<u>Washroom Equip., Inc.</u>, 401 F.3d 123, 135 (3d Cir. 2005) (citing
<u>Wilson v. Garcia</u>, 471 U.S. 261, 266-67 (1985)).[7] "Once use
becomes infringing, the relevant date for quantifying the
'delay' is when the trademark owner either knew or should have
known of the existence of a provable claim of infringement, and
an owner's claim does not ripen until the defendant's
infringement is sufficiently far-reaching to create a likelihood
of confusion." <u>Covertech</u>, 855 F.3d at 175-76.

Here, Smith's position that Director's Choice is barred
from asserting its rights in the disputed domain name because it
"delayed 14 years to file any complaint at all or make any
notification of trademark claims" (Pl. Br. at ¶ 46) runs counter
to the allegations in the counterclaims, which this Court must
accept as true for the purposes of this motion: Director's
Choice alleges that it took steps to protect its right in the
name "Director's Choice," i.e. filed its URDP arbitration,
shortly after it filed its USPTO trademark applications (or, in
other words, had "a provable claim of infringement"), and that
Smith's use of the disputed domain name only became "infringing"

---

[7] A state law claim is analogous where it matches "the essence of
the claim in the pending case." <u>Id.</u> Here, Director's Choice's
claims are properly characterized as akin to fraud claims. New
Jersey applies a six year limitations period to fraud claims.
N.J.S.A. § 2A:14-1.

when he posted a movie review website in December, 2014 (or, in other words, when Director's Choice's claim ripened by Smith's "sufficiently far-reaching" infringement). (Counterclaims ¶¶ 18, 38-41.) Because an unreasonable or inexcusable delay more than six years after the accrual of Director's Choice's claim is not apparent on the four corners of the counterclaims, to dismiss them at this stage of the litigation would be inappropriate.

Nor can Smith prove, at the motion to dismiss stage, his equitable estoppel affirmative defense. "Equitable estoppel is an equitable doctrine providing that 'one may, by voluntary conduct, be precluded from taking such a course of action that would work injustice and wrong to one who with good reason and in good faith relied upon such conduct.'" <u>Cardillo v. Bloomfield 206 Corp.</u>, 988 A.2d 136, 140 (N.J. App. Div. 2010) (citing <u>Summer Cottagers' Ass'n of Cape May v. City of Cape May</u>, 117 A.2d 585, 590 (N.J. 1955)). Under New Jersey law,

> [t]o establish a claim of equitable estoppel, the claiming party must show that the alleged conduct was done, or representation was made, intentionally or under such circumstances that it was both natural and probable that it would induce action. Further, the conduct must be relied on, and the relying party must so act as to change his or her position to his or her detriment.

<u>Miller v. Miller</u>, 478 A.2d 351, 355 (N.J. 1984). Here, it is not apparent from the face of the counterclaims that Director's Choice intentionally misled Smith to believe that they were

planning to abandon their claim to the "Director's Choice" name and not enforce their interest in it. While facts sufficient to prove this affirmative defense might be adduced through discovery, the Court cannot dismiss Director's Choice's claims on this basis now.

### D. Director's Choice's pleadings satisfy Rules 8(a) and 9(b).

Finally, Smith argues that Director's Choice's pleadings are too vague to satisfy Rule 8(a), which requires that all pleadings contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P.8(a).

First, Smith asserts that the counterclaims "make vague references to terms such as 'renewal' and 're-registration' and appear to use them interchangeably even though they mean different things and must be defined further to understand what is meant." (Pl. Br. at ¶ 37.) The Court disagrees that Director's Choice's use of this terminology is too vague to set forth "fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). The allegations which Smith challenges assert that "Upon information and belief, after being contacted by Director's Choice about purchasing the Disputed Domain name in 2002, Smith, or a business entity operated by Smith, re-

registered the Disputed Domain Name at least three (3) times"
and "Upon information and belief, Smith had full knowledge of
Director's Choice's prior rights in its DIRECTOR'S CHOICE Marks
when he renewed the registration for the Disputed Domain Name."
(Counterclaims ¶¶ 35 & 54.) The precise mechanism by which Smith
continued his control over the disputed domain name (whether by
renewal or re-registration) does not change the crux of
Director's Choice's claim in these allegations: that Smith knew
that Director's Choice had rights to the disputed domain name,
and ignored them. These allegations are sufficient to withstand
a Rule 12(b)(6) motion.

Smith also argues that Counts II and III of the
counterclaims, regarding the validity and enforceability of the
'299 Registration, are insufficiently plead because "[i]t is
unclear what actions Director's Choice, LLP claims are fraud or
why it would be considered fraud or be material to the
registrability of the mark." (Pl. Br. at ¶ 54.)

To the contrary, these counts sufficiently allege
fraudulent procurement of a trademark and seek appropriate
relief. As these claims sound in fraud, the counterclaims must
satisfy Rule 9(b), Fed. R. Civ. P., which requires that "a
plaintiff alleging fraud must state the circumstances of the
alleged fraud with sufficient particularity to place the
defendant on notice of the 'precise misconduct with which [it

is] charged.'" Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007) (quoting Lum v. Bank of Amer., 361 F.3d 217-223-24 (3d Cir. 2004)). "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." Id.

"The Lanham Act provides that a third party may petition for cancellation of a registered trademark if the registration was procured by fraud." Covertech, 855 F.3d at 174 (citing 15 U.S.C. §§ 1064(3), 1120. To succeed on such a claim, a plaintiff must show, by clear and convincing evidence, that "the applicant or registrant knowingly ma[de] a false, material representation with the intent to deceive the PTO" and that "the registrant actually knew or believed that someone else had a right to the mark." Id. (citing In re Bose Corp., 580 F.3d 1240, 1245 (Fed. Cir. 2009) and Marshak, 240 F.3d at 196).

Here, Director's Choice has averred the required elements of a fraudulent procurement claim with the required level of specificity. The counterclaims allege that HELP.org and Smith filed the '299 Registration application with the USPTO after the arbitration panel had already determined that HELP.org had no rights or legitimate interests in the disputed domain name and ordered transfer to Director's Choice, or in other words when HELP.org and Smith "actually knew . . . that someone else had a

right to the mark." (Counterclaims ¶¶ 37-43.) Director's Choice has identified particular representations made in the '299 Registration application that it avers are false and material: the "date of the first use of the mark" and the "date of first use in commerce." (Id. ¶¶ 61-67.) It further explains how those dates are false, because, inter alia, HELP.org did not exist or the website at the disputed domain name was "almost completely blank . . . without any original content" at those particular times. (Id. ¶ 66) Director's Choice also alleges, as it must, that HELP.org and Smith "had full knowledge and belief that its representations were false when made to the USPTO," that it "intended to induce the Trademark Examiner to rely upon the false representations so as to further HELP.org, LLC's ultimate goal of procuring the registration," and that the Trademark Examiner relied upon these representations in issuing the 299 Registration. (Id. ¶¶ 68-70.)[8] In other words, Director's Choice has plead the "who, what, where, when, and how" of its fraudulent procurement claim with enough "particularly" to withstand a motion to dismiss.

---

[8] Because Rule 9(b), Fed. R. Civ. P. allows that "intent, knowledge, and other conditions of a person's mind may be alleged generally," these allegations are sufficient without further detail.

## V.   CONCLUSION

The accompanying Order will be entered.


 **July 11, 2017**                                    **s/ Jerome B. Simandle**
Date                                                 JEROME B. SIMANDLE
                                                     U.S. District Judge