# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| RUSS SMITH,<br><br>                Plaintiff,<br><br>v.<br><br>DIRECTOR'S CHOICE, LLP,<br><br>                Defendant. | Civil Action No.: 1:15-cv-00081 (JBS)(AMD)<br><br>(Electronically Filed Document) |
| DIRECTOR'S CHOICE, LLP,<br><br>                Third-Party Plaintiff,<br><br>v.<br><br>HELP.ORG, LLC,<br><br>                Third-Party Defendant. | **Return Date: November 20, 2017** |

---

### MEMORANDUM OF LAW IN SUPPORT OF
### DEFENDANT DIRECTOR'S CHOICE, LLP'S MOTION TO COMPEL

---

 

Matthew A. Kaplan, Esq.
**ABBOTT BUSHLOW & SCHECHNER, LLP**
70-11 Fresh Pond Road
Ridgewood, New York 11385
(718) 366-0464
(718) 366-7049 (facsimile)
*Attorneys for Defendant Director's Choice, LLP*

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

STATEMENT OF FACTS ............................................................................................................2

LEGAL ARGUMENT ...................................................................................................................3

I.  Standard on Motion to Compel...............................................................................3

II. Plaintiff Should Be Compelled to Produce Discovery ...........................................5

    A.  Requests for Production of Documents ......................................................5

        1.  Plaintiff Improperly Redacted Documents Relating To Offers to Purchase or Develop the Disputed Domain Name ...........5

        2.  Plaintiff Refuses to Produce Documents Concerning Documents and Things He Relied Upon When Making Business Decisions Concerning the Disputed Domain Name ................................................................................................9

        3.  Plaintiff Should Be Compelled to Produce All Communications Between Himself and Tucows Inc., the Registrar of the Disputed Domain Name ......................................10

        4.  Plaintiff Is Entitled To Discovery How Much Plaintiff Has Made From His Domain Name Businesses ..................................12

    B.  Interrogatories ...........................................................................................13

        1.  Interrogatory Nos. 1 to 5 .............................................................13

        2.  Interrogatory No. 7......................................................................14

CONCLUSION............................................................................................................15

# **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Caver v. City of Trenton*, 192 F.R.D. 154 (D.N.J. 2000) ..................................... 3, 4

*Hickman v. Taylor*, 329 U.S. 495 (1947) ................................................................ 3

*International Paper Co. v. Rexam, Inc.*, 2013 WL 3043638, No. 11-6494
 (D.N.J. Jun. 17, 2013) ................................................................................ 4

*Jones v. Derosa*, 238 F.R.D. 157 (D.N.J. 2006) ...................................................... 3

*Kopacz v. Del. River and Bay Auth.*, 225 F.R.D. 494 (D.N.J. 2004) ...................... 3

*Leski, Inc. v. Federal Ins. Co.*, 129 F.R.D. 99, 104 (D.N.J. 1989) ........................... 4

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) .............................. 4

*Scouler v. Craig*, 116 F.R.D. 494 (D.N.J. 1987) ..................................................... 4

*Takacs v. Union County*, 2009 WL 3048471, No. 08-711
 (D.N.J. Sept. 23, 2009) .............................................................................. 3

*Tele-Radio Sys. Ltd. v. DeForest Elecs., Inc.*, 92 F.R.D. 371 (D.N.J. 1981) ....... 3, 4

**Rules and Statutes**

Fed. R. Civ. P. 26 ............................................................................................ 2, 3, 4

15 U.S.C. § 1125(d)(1)(A) ....................................................................................... 8

15 U.S.C. § 1125(d)(1)(B)(i) ................................................................................... 9

15 U.S.C. § 1125(d)(1)(B)(i)(XIII) ....................................................................... 14

**Other**

8 Wright & Miller, FEDERAL PRACTICE AND PROCEDURE § 2008
 (2d ed. 1994) .............................................................................................. 4

**PRELIMINARY STATEMENT**

As the Court is aware, this action concerns the ownership of the domain name "directorschoice.com" (the "Disputed Domain Name"). After a three-member Uniform Domain Name Resolution Policy ("UDRP") Administrative Panel ruled that *pro se* Plaintiff Russ Smith's company HELP.org, LLC did not have any rights or legitimate interests in the Disputed Domain Name and had registered and was using the Disputed Domain Name in bad faith and ordered the Disputed Domain Name be transferred to Defendant Director's Choice, LLP, *pro se* Plaintiff Russ Smith ("Plaintiff" or "Mr. Smith") filed the instant lawsuit seeking a declaration that he was using the Disputed Domain Name lawfully and that Defendant made material misrepresentations to the UDRP Administrative Panel. Defendant Director's Choice, LLP ("Defendant") filed counterclaims against Mr. Smith, alleging *inter alia* a violation of the Anti-Cybersquatting Consumer Protection Act, trademark infringement, and seeking a declaration that Mr. Smith's trademark in the mark "DIRECTOR'S CHOICE" is invalid and unenforceable.

As Plaintiff asserts that he was lawfully using the Disputed Domain Name, Defendant has sought discovery from Plaintiff regarding *inter alia* his communications with third parties concerning offers to purchase or develop the Disputed Domain Name, documents he claimed he relied upon in making business decisions concerning the Disputed Domain Name, documents and information regarding other domain names that he purchased and sold, and information regarding the revenue he has earned from such sales, among other items.

In response to such requests, Mr. Smith produced redacted e-mails and otherwise objected to searching for and/or producing documents or providing information because he claims Defendant's requests are irrelevant, too burdensome or somehow violate privilege.

1

Mr. Smith's positions are meritless and squarely against the broad scope of discovery mandated by Fed. R. Civ. P. 26.

Accordingly, Defendant respectfully moves the Court for an Order requiring Plaintiff to provide full and complete responses to Defendant's Document Request Nos. 16, 17, 19, 23, 45, and 48, and Interrogatory Nos. 1, 2, 3, 4, 5, and 7.

## STATEMENT OF FACTS

For the sake of brevity, Defendant refers the Court to the Background section of District Judge Jerome B. Simandle's July 11, 2017 Opinion denying Plaintiff's Motion to Dismiss Defendant's Counterclaims, relevant portions of which are attached as Exhibit A to the Declaration of Matthew A. Kaplan in Support of Defendant's Motion to Compel ("Kaplan Decl."), for a succinct statement of the relevant facts and claims asserted by both parties in the instant lawsuit.

Additionally, subsequent to Plaintiff filing his Motion to Dismiss Defendant's Counterclaims, Mr. Smith filed a corrected Third Amended Complaint, dated March 20, 2017 in which he added further allegations concerning alleged material misstatements made by Defendant. Kaplan Decl, Ex. B. Defendant answered the March 20, 2017 Third Amended Complaint and asserted Counterclaims on March 31, 2017. Kaplan Decl., Ex. C. Mr. Smith filed his Reply to the Counterclaims on July 28, 2017, following the denial of his motion to dismiss. Kaplan Decl., Ex. D.

## **LEGAL ARGUMENT**

**I.      Standard on Motion to Compel**

Federal Rule of Civil Procedure 26 ("Rule 26") governs the permissible scope of discovery, defining it as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b).

"Courts have construed this rule liberally, creating a broad vista for discovery." *Takacs v. Union County*, 2009 WL 3048471, No. 08-711 at *1 (D.N.J. Sept. 23, 2009) (citing *Tele-Radio Sys. Ltd. v. DeForest Elecs., Inc.*, 92 F.R.D. 371, 375 (D.N.J. 1981)).[1] Discovery encompasses "any matter that bears on or reasonably could lead to other matters that could bear on any issue that is or may be in the case." *Kopacz v. Del. River and Bay Auth.*, 225 F.R.D. 494, 496 (D.N.J. 2004) because a "review of all relevant evidence provides each party with a fair opportunity to present an effective case at trial." *Jones v. Derosa*, 238 F.R.D. 157, 163 (D.N.J. 2006). "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation ... [and] either party may compel the other to disgorge whatever facts he has in his possession." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947).

The party seeking discovery bears the burden of showing that the information sought its relevant to the subject matter of the action and may lead to admissible evidence. *Caver v. City of*

---

[1] Copies of unpublished cases are attached as Exhibit M to the Kaplan Declaration.

*Trenton*, 192 F.R.D. 154, 159 (D.N.J. 2000). Relevancy is determined "in light of the allegations of the complaint, not as to evidentiary admissibility." *Id.*; *Scouler v. Craig*, 116 F.R.D. 494, 496 (D.N.J. 1987). "[T]he relevancy standard is satisfied, and discovery requests should be granted, if there is any possibility that the information sought may be relevant to the general subject matter of the action." *International Paper Co. v. Rexam, Inc.*, 2013 WL 3043638, at *3, No. 11-6494 (D.N.J. Jun. 17, 2013) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

Additionally, the discoverability of information is not contingent on whether the evidence will ultimately be admissible at trial. *See Leski, Inc. v. Federal Ins. Co.*, 129 F.R.D. 99, 104 (D.N.J. 1989). "The fact that the information sought will be admissible at trial is a strong argument in favor of discovery." 8 Wright & Miller, FEDERAL PRACTICE AND PROCEDURE § 2008, at 111 (2d ed. 1994). But the converse is not true. *Id.* "Admissibility at the trial is not the limit of discovery, and discovery may properly be had of inadmissible matter." *Id.* Thus, making a determination on the issue of admissibility is premature at the discovery phase. *International Paper Co.*, 2013 WL 3043638, at *3 (finding issue of whether certain evidence was admissible was "irrelevant – or, at very least, premature – to a Rule 26 analysis").

"The party resisting discovery has the burden of clarifying and explaining its objections to provide support therefor." *Tele-Radio Sys. Ltd.*, 92 F.R.D. at 375. Further, to the extent that a party claims that certain information is privileged or otherwise protected, that party asserting such privilege bears the burden of establishing that such privilege or protection exists. *Caver,* 192 F.R.D. at 159.

## II. Plaintiff Should Be Compelled to Produce Discovery

### A. Requests for Production of Documents

#### 1. Plaintiff Improperly Redacted Documents Relating To Offers to Purchase or Develop the Disputed Domain Name.

Plaintiff should be compelled to produce full and unredacted copies of e-mails and other documents that he exchanged with persons or entities that allegedly sought to purchase the Disputed Domain Name from him (including Defendant) or wanted to enter into some form of business partnership with Plaintiff to develop the Disputed Domain Name. Without fully defining on what grounds such information was privileged and/or confidential, Mr. Smith refused to produce redacted copies of such e-mails and documents and stated that he would only do if directed to do so by court order.

> **Document Request No. 16.** Copies of all correspondence, communications, notes of communications, print outs, etc., between Director's Choice and Smith and/or any entity owned or operated by Smith concerning any inquiry into purchasing the Disputed Domain Name, including any responses by Smith or any person on Smith's behalf.
>
> **Document Request No. 17.** Copies of all correspondence, communications, notes of communications, print outs, etc., between any individual or entity (other than Director's Choice) and Smith and/or any entity owned or operated by Smith concerning any inquiry into purchasing the Disputed Domain Name, including any responses by Smith or any person on Smith's behalf.
>
> **Document Request No. 19.** Any and all documents memorializing offers to purchase the Disputed Domain Name.

Kaplan Decl., Ex. E.

> **Response to Document Request No. 16.** Director's Choice, LLP already has copies of those communication and communications with other entities are not relevant and privileged as discussed above.
>
> **Response to Document Request No. 17.** Same answer as 16.

> **Response to Document Request No. 19.** Director's Choice, LLP also already has copies of their offers and other communications are privileged as discussed above.
>
> General objection - Communications with third parties are privileged in that the release of information to Director's Choice, LLC is not a permitted use of the information in the various privacy policies that Smith's LLC's operated under. Further, those third parties would generally consider discussions about domain names, partnerships, offers, etc. to be proprietary.

Kaplan Decl., Ex. G.

As to copies of communications between Mr. Smith and Director's Choice, Mr. Smith merely reprinted copies of e-mails that he previously submitted to the Arbitration Panel during the UDRP proceeding. Some of those e-mails were marked up and do not appear to contain the complete e-mail chain. Defendant is entitled to get clean and complete copies of all such e-mails in Plaintiff's possession, custody and control.

As to copies of communications with other individuals and entities, Plaintiff did produce e-mails that appear to memorialize discussions with third parties inquiring about purchasing and/or developing the Disputed Domain Name. *See* Kaplan Decl., Ex. K.[2] However, as the Court saw during the most recent in-person Status Conference, those e-mails were heavily redacted to remove any information that could identify the party with whom Mr. Smith was dealing. Given the heavy redaction, it is unknown whether the content of those communications was redacted as well.

Defendant is entitled to know exactly who Mr. Smith was communicating with concerning selling the Disputed Domain Name and the content of such communications so Defendant can investigate whether those were legitimate offers to purchase (and whether

---

[2] Defendant will produce hard copies of the redacted e-mails to the Court under separate cover because Mr. Smith previously objected to (and threatened sanctions against) when it filed on the docket copies of e-mails which contained one or more of his e-mail addresses.

6

Mr. Smith was legitimately offering to sell the Disputed Domain Name).  Moreover, as Mr. Smith asserts in his Complaint that Defendant made materially false statements to the Arbitration Panel, including "creat[ing] multiple Internet identities . . . ("sock puppets") and made it appear as if numerous parties were interested in buying the disputed domain name." Kaplan Decl., Ex. A, ¶ 9, Defendant must be permitted to obtain unredacted copies of all such e-mails.  If not, Defendant cannot oppose Mr. Smith's claim that Defendant set up alternate identities to try to purchase the Disputed Domain Name and made material misrepresentations to the UDRP Arbitration Panel.  In short, Mr. Smith should not be given an unfair advantage.

     Moreover, Mr. Smith has failed to explain with any specificity under what grounds he claims such communications are privileged and/or proprietary.  Regardless, it is doubtful that such communications would be privileged or protectable.  To the extent that Mr. Smith claims that a Privacy Policy applies or applied to any such communications, Mr. Smith did not produce a copy of the Privacy Policy that was posted at the Disputed Domain Name contemporaneous to when the communications were received.  Instead, Mr. Smith produced a Privacy Policy from the domain name <Help.org> dated December 9, 2016.  Kaplan Decl., Ex. L.  Thus, it is unknown whether there was a contemporaneous privacy policy at the Disputed Domain Name applicable to such communications.  Finally, Mr. Smith could produce the unredacted documents pursuant to the Stipulated Discovery Confidentiality Order entered into by the parties if he is concerned that such documents would be released into the public.

     Furthermore, Plaintiff should be compelled to produce full and unredacted copies of e-mails and other documents identifying other domain names that he owns.  For example, Mr. Smith produced an e-mail concerning the possible development of a number of domain names

that he owned.  However, besides the Disputed Domain Name and the <dinerschoice.com> domain name, Mr. Smith redacted all other domain names from that e-mail.

Defendant is clearly entitled to discover what other domain names Mr. Smith has purchased and/sold as such information is relevant to both Defendant's defense against Mr. Smith's claim that this Court should declare that he was lawfully using the Disputed Domain Name (such that the UDRP Administrative Panel ruled improperly) as well as Defendant's affirmative claims of violations of the Anti-Cybersquatting Consumer Protection Act (ACPA) and trademark infringement.

The ACPA makes it illegal for a person to register an internet domain name that is "identical or confusingly similar" to the trademark of another person or company, with the "bad faith" intent to profit from that mark. 15 U.S.C. § 1125(d)(1)(A).  There are nine non-exhaustive factors under the ACPA that may inform the inquiry as to bad faith intent:

(I)   the trademark or other intellectual property rights of the person, if any, in the domain name;

(II)   the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;

(III)   the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;

(IV)   the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

(V)   the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

*(VI)*   *the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;*

8

(VII)   the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

*(XIII)   the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and*

(IX)   the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c)(1) of this section.

15 U.S.C. § 1125(d)(1)(B)(i) (emphasis added).

In light of the plain language of the statute, discovery regarding other domain names registered by Plaintiff, and whether Plaintiff has attempted to sell such domain names, is clearly relevant to Defendant's ACPA claim against him and to its defense of Plaintiff's claim that he used the Disputed Domain Name lawfully. Indeed, Plaintiff admitted to at least two instances where he was the respondent in a domain name dispute with the United States Postal Service and another dispute over the domain name <casro.com>. *See* Kaplan Decl, Ex. G, Response to Interrogatory No. 6. Accordingly, Plaintiff should be compelled to provide such documents.

> **2.   Plaintiff Refuses to Produce Documents Concerning Documents and Things He Relied Upon When Making Business Decisions Concerning the Disputed Domain Name.**

In support of his Motion to Dismiss Defendant's Counterclaims, Plaintiff filed an Affidavit in which he claimed that he relied upon certain "public filings and private communications" in making business decisions concerning the Disputed Domain Name. However, Plaintiff refuses to produce copies of any such documents or otherwise identify what those documents are. Instead, Mr. Smith merely states that he placed such documents "on the record" or provided such documents with his Requests of Admissions.

9

**Document Request No. 45.**  As set forth in the October 17, 2016 Affidavit of Russ Smith in Support of Motion to Dismiss Defendant's Counterclaims, copies of any "public filings and private communications" that Smith relied upon when he "made business decisions concerning the [Disputed Domain Name]."

Kaplan Decl., Ex. E.

**Response to Document Request No. 45.**  Those records have already been placed on the record or have been provided as part of Smith's request for admissions.

Kaplan Decl., Ex. G.

**Smith's March 25, 2017 Response to Deficiency Letter.**  I am under no obligation to provide copies of information you already have.  I do not have any additional records.

Kaplan Decl., Ex. I.

As Mr. Smith seeks a declaration that he lawfully used the Disputed Domain Name, Defendant is entitled to know exactly what Mr. Smith purportedly relied upon in making his business decisions regarding the Disputed Domain Name.  Defendant should not be forced to guess which documents Mr. Smith is referring to, nor should it have to scour the record in the hopes of figuring it out.  Thus, Mr. Smith should be compelled to produce copies of all such documents, or, at a minimum, identify the specific documents he relied upon.

> 3. **Plaintiff Should Be Compelled to Produce All Communications Between Himself and Tucows Inc., the Registrar of the Disputed Domain Name.**

Defendant sought copies of all communications between Plaintiff and the Registrar of the Disputed Domain Name, Tucows Inc., concerning the Disputed Domain Name.

**Document Request No. 23.**  Copies of all correspondence, communications, notes of communications, etc. between Smith and Tucows Inc. regarding the Disputed Domain Name.

Kaplan Decl., Ex. E.

10

>**Response to Document Request No. 23.** It is too burdensome to sift through email communications with Tucows and those communications are irrelevant to any claim except for the records already provided in item 2.

Kaplan Decl., Ex. G.

>**Smith's March 25. 2017 Response to Deficiency Letter.**  23. I have not had time to search for this as you did not give me enough time and you have not resolved the email communication issue.  I will supplement my reply when I have time and if I find anything relevant to the case.  In the meantime I continue to object that it is too burdensome to find emails, most of which are irrelevant or involve undisputed facts.

Kaplan Decl., Ex. I.

On the one hand, Mr. Smith responded by objecting to have to produce any documents concerning those communications because they are irrelevant or involve undisputed facts.  On the other hand, Mr. Smith then complained that he did not have sufficient time to search for such documents.  Subsequently, Mr. Smith produced copies of some e-mails he had with Tucows Inc. in which Tucows confirmed that Mr. Smith filed the instant lawsuit, and some additional e-mails regarding changes he wanted to make to the nameservers for the Disputed Domain Name.

However, upon information and belief, Mr. Smith had other written communications with Tucows after the UDRP Administrative Panel rendered its decision and ordered the Disputed Domain Name be transferred.  Moreover, it is undisputed that Mr. Smith changed the Registrant of the Disputed Domain Name from his corporate entity HELP.org, LLC to himself individually after Defendant filed its Amended Answer.  Therefore, to the extent that Mr. Smith has withheld copies of any written communications he had with Tucows because he believes such communications are irrelevant, Defendant is entitled to obtain copies of any and all such communications.

### 4. Plaintiff Is Entitled To Discovery How Much Plaintiff Has Made From His Domain Name Businesses.

Next, Defendant sought documents setting forth the amount of revenue earned annually by Plaintiff through his various "Internet businesses" from 2000 to date.

> **Document Request No. 48.**  Documents setting forth the amount of revenue earned annually from Smith's "Internet businesses" from 2000 to date.

Kaplan Decl., Ex. E.

> **Response to Document Request No. 48.** Not relevant, privileged, and too burdensome to provide as discussed above.

Kaplan Decl., Ex. G.

> **Smith's March 25, 2017 Response to Deficiency Letter.**  There are no allegations that Smith "has engaged in a pattern of registering domain names that contain or are confusingly similar to the trademarks of others and selling such domain names for profit."  Further Smith has not made any claims that the arbitration panel decision was wrong.  This request is also an attempt to obtain trade secrets from Smith's business and does not have to be supplied.

Kaplan Decl., Ex. I.

Plaintiff's annual earnings from his domain name sales businesses are not privileged and are highly relevant.  Such information is clearly relevant to the question of whether Plaintiff (either individually or through one of his businesses) engaged in a pattern of registering domain names that contain or are confusingly similar to the trademarks of others and sold such domain names for profit.  This information would not only support Defendant's defense to Plaintiff's claim that he lawfully used the Disputed Domain Name, but also support Defendant's ACPA and trademark infringement claims against Plaintiff.

### B. Interrogatories

Similarly, Smith has improperly refused to provide responses to certain Interrogatories served upon him.

#### 1. Interrogatory Nos. 1 to 5

In his Third Amended Complaint, Plaintiff states that he operated a number of internet businesses since 1997 on a part-time basis, and that those business entities buy and sell websites and domain names in the normal course of business. Kaplan Decl., Ex. B ,¶ 1. Accordingly, Defendant served a number of Interrogatories seeking information about the other domain names Mr. Smith (either individually or through one of the business he was operating) purchased and sold.

> **Interrogatory No. 1.**  Identify each domain name that Smith and/or any entity owned or operated by Smith has registered and provide the name of the domain name registrant and date of registration for each said domain name.
>
> **Interrogatory No. 2.**  For each domain name identified in response to Interrogatory No. 1 that Smith and/or any entity owned or operated by Smith has sold, leased or otherwise transferred, identify the person to whom such domain name was sold or transferred, the date of the sale or transfer, and the consideration received for the sale or transfer.
>
> **Interrogatory No. 3.**  Identify each domain name currently owned by Smith and/or any entity owned or operated by Smith.
>
> **Interrogatory No. 4.**  For each domain name identified in response to Interrogatory No. 1, state the date on which Smith and/or any entity owned or operated by Smith first used the domain name in conjunction with an web site accessible under such domain name, identify the web site, and state whether Smith and/or any entity owned or operated by Smith is currently using the domain name for such web site.
>
> **Interrogatory No. 5.**  For each web site now or formerly accessible under any domain name identified in response to Interrogatory No. 1, identify the nature and purpose of such web site and all goods and services offered on such web site.

Kaplan Decl., Ex. F.

>**Smith's Response to No. 1.**  Not relevant or too burdensome to supply. Director's Choice already has the domain records for the disputed domain name.
>
>**Smith's Response to No. 2.**  Not relevant or too burdensome to supply or privileged as discussed above.
>
>**Smith's Response to Nos. 3 to 5.**  Same answer as 2.

Kaplan Decl., Ex. G.

>**Smith's March 25, 2017 Response to Deficiency Letter** – most of the information requested is not required to be submitted pursuant to FRCP 26(b). . . . There are no allegations that Smith "has engaged in a pattern of registering domain names that contain or are confusingly similar to the trademarks of others and selling such domain names for profit."

Kaplan Decl., Ex. I.

As explained in Section II.A.1. *supra*, Defendant is entitled to obtain discovery of other domain names registered to Mr. Smith and/or any of the entities that he previously owned and/or operated because whether an individual has registered and sold numerous domain names is a factor that courts consider in determining whether a party has violated the ACPA. 15 U.S.C. § 1125(d)(1)(b)(i)(XIII).  Accordingly, Plaintiff should be compelled to provide such information.

### 2. Interrogatory No. 7

>**Interrogatory No. 7.**  Identify each individual or entity with knowledge of Smith's intent to use the Disputed Domain Name and the <DinersChoice.com> domain name to operate movie and restaurant-related web sites.

Kaplan Decl., Ex. F.

>**Smith's Response to No. 7.**  Too burdensome to supply since it would require searching email and other discussions (see above objections).

Kaplan Decl., Ex. G.

>**Smith's March 25, 2017 Response to Deficiency Letter** – I have been able to find some of those communications and they are attached. . . . I have not had tome [*sic*] to search for additional emails.  This situation is caused because your

14

client waited so long to file the UDRP. I do not have to make extensive searched [*sic*] because it would burdensome [*sic*] and the related factual issues do not appear to be disputed.

Kaplan Decl., Ex. I.

While Plaintiff did produce some e-mails in response to Defendant's Deficiency Letter, as explained above, the e-mails produced were heavily redacted to remove the identity of the persons inquiring about purchasing the Disputed Domain Name. Moreover, Plaintiff unilaterally decided when it became too burdensome for him to respond, and that the factual issues are not disputed (when they are).

As Plaintiff's lawsuit claims that the UDRP Arbitration Panel improperly determined that *inter alia* he registered and was using the Disputed Domain Name in bad faith, Defendant is entitled to know whether there are any individuals who could corroborate Plaintiff's claims that he intended to use the Disputed Domain Name to operate a movie website. Defendant also seeks discovery as to the identity of any individual who could corroborate Plaintiff's claims that he intended to use the domain name <dinerschoice.com>to operate a website related to restaurants. Plaintiff registered the Disputed Domain Name and <dinerschoice.com> on the same day and has claimed that he was planning on developing the websites together. Defendant is entitled to investigate that assertion.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Compel should be granted, and Plaintiff ordered to produce the requested documents and information.

ABBOTT BUSHLOW & SCHECHNER, LLP
*Attorneys for Defendant Director's Choice, LLP*

By:    s/ Matthew A. Kaplan

Dated: Ridgewood, New York
October 25, 2017